In the

# United States Court of Appeals
## For the Seventh Circuit

No. 99-4292

JOHN C. BLEAVINS,

*Plaintiff-Appellee,*

*v.*

JOEL H. BARTELS, ROGER BAY, and
VERNON MCGREGOR,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-1236—**Michael M. Mihm**, *Judge.*

ARGUED JANUARY 10, 2002—DECIDED APRIL 16, 2003

Before HARLINGTON WOOD, JR., RIPPLE, and ROVNER,
*Circuit Judges.*

HARLINGTON WOOD, JR., *Circuit Judge.* The Illinois De-
partment of Revenue determined that plaintiff-appellee
John Bleavins owed the state $11,415.70 in back taxes,
penalties, and interest. Bleavins failed to respond to a
notice and demand for payment; therefore, on May 2, 1995,
Joel Bartels, an employee of the Illinois Department of
Revenue, issued a seizure warrant pursuant to § 1109 of
the Illinois Income Tax Act, 35 ILL. COMP. STAT. 5/1109.
This administrative warrant was addressed to the "Coun-
ty Sheriff, Macon County" and directed the sheriff to "levy
on, seize and sell the taxpayer's property, as shown on the

attached sheet." The attached sheet included a heading with Bleavins' name and social security number and read as follows: "1-Pontoon Boat, 1-Speed Boat."

Before Bartels issued the warrant, Department of Revenue employee Roger Bay was sent out to Bleavins' home to determine whether there were assets available for seizure. Bay did not enter Bleavins' property, but sat fifty to seventy yards away and used binoculars to inventory the site. He observed a flatbed trailer, a utility trailer, some tools related to Bleavins' carpentry business, the boats, and a pickup truck. Bay recorded license plate numbers from the truck, the trailers, and the boats. Bay then completed a "Checklist for Seizure" form which he provided to Bartels, together with a sketch of Bleavins' property showing the location of the items listed above as well as permanent structures. On the checklist, Bay recommended seizure of the pickup truck, the tools, the pontoon boat, and the speed boat. Bay returned to the site several days before the warrant was issued to make sure that the property was still there.

On May 2, Bartels and Bay, together with Vernon McGregor, manager of the Field Compliance Division for the Department of Revenue, met with Deputies Baum, Terry, and Veach of the Macon County Sheriff's Office. The six men then proceeded to Bleavins' home to execute the warrant. They entered onto Bleavins' property, and Deputy Baum served the warrant on Bleavins, who voiced strong objections to the seizure of his property. McGregor determined that the men should not take the pontoon boat or the speed boat because he believed that they would not be able to take the boats without damaging them. McGregor then asked the deputies to run a license plate check on the flatbed and utility trailers which were located near the boats. When the check revealed that the trailers were registered to Bleavins, McGregor informed Bleavins that the trailers would be seized in lieu of the

boats, despite the fact that McGregor knew that the trailers were not listed on the seizure warrant. The trailers, which were towed away, contained about fifty tools.

An inventory of the trailers and their contents was completed approximately six weeks after the seizure. On the advice of the Macon County State's Attorney, a new seizure warrant was prepared on July 3, 1995. This warrant listed all of the property that had been seized on May 2. A copy of the July 3 warrant was served on Bleavins. Meanwhile, on June 12, 1995, Bleavins filed suit in the Circuit Court of Macon County, seeking the return of the items that had been seized. On July 7, the court ordered that all of the property be returned, and Bleavins concedes that the items were returned to him in the same condition as when they were taken.

Bleavins then filed this civil rights suit in state court in Macon County in March 1996, alleging a violation of his rights under the Fourth and Fourteenth Amendments. The suit named Bartels, Bay, McGregor, the three deputies, and Lee Holsapple, the Macon County Sheriff, as defendants. On April 26, 1996, the Department of Revenue defendants filed a notice of removal pursuant to 28 U.S.C. § 1441(a). The case was removed to the United States District Court for the Central District of Illinois. The district court granted summary judgment in favor of Bleavins on the liability issue and denied the defendants' claims of qualified immunity.

A two-day jury trial was held on the issue of damages, following which the jury awarded Bleavins $1,000 in damages. The Department of Revenue defendants filed a notice of appeal on December 16, 1999. The County defendants filed a notice of appeal on December 17, 1999. Bleavins filed a notice of appeal as to the amount of damages on December 29, 1999. Both the County defendants and Bleavins voluntarily dismissed their appeals pursu-

ant to Fed. R. App. P. 42(b) after the parties agreed to a settlement in conjunction with discussions held pursuant to Cir. R. 33. This appeal, therefore, deals only with the claims raised by the Department of Revenue defendants ("appellants"). This panel issued its original opinion in this case on March 15, 2001; however, that opinion was withdrawn when we granted appellants' petition for rehearing. Following supplemental briefing, the case was reheard by the original panel on January 10, 2002.

## ANALYSIS

Appellants contend the seizure of the trailers did not violate Bleavins' Fourth Amendment rights, and therefore, the district court's grant of summary judgment should be reversed. Alternatively, they contend that, even if they did violate Bleavins' Fourth Amendment rights by seizing items within the curtilage of his home without a valid Fourth Amendment warrant, they are nevertheless entitled to qualified immunity. We review both issues *de novo. Myers v. Hasara,* 226 F.3d 821, 825 (7th Cir. 2000).

Bleavins does not contest appellants' assertion that the seized trailers were subject to a valid tax lien.[1] Under *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351-52 (1977), a tax seizure that does not involve an invasion of privacy does not implicate Fourth Amendment concerns. "[T]he Fourth Amendment protects two types of expectations, one involving searches, the other seizures. A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A seizure of property occurs where there is some meaningful interfer-

---

[1] Under 35 ILL. COMP. STAT. 5/1101, a lien in favor of the State of Illinois attaches to "all property and rights to property, whether real or personal," belonging to a delinquent taxpayer.

ence with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (internal quotations and citations omitted). A judicial warrant is not required under the Fourth Amendment for seizure of property that is subject to a valid tax lien. *G.M. Leasing*, 429 U.S. at 352. Therefore, the focus of our inquiry is on the search aspect of the Fourth Amendment. We must determine whether appellants, in seizing the trailers, interfered with Bleavins' legitimate privacy interests.

In their supplemental brief on rehearing, appellants acknowledge that the administrative warrant at issue in this case does not, and was not intended to, meet the requirements of the Fourth Amendment. In response to questioning at oral argument, counsel for appellants conceded that, if appellants entered into an area in which Bleavins had a legitimate privacy interest, they would have needed to obtain another warrant, issued by a neutral and detached magistrate, to justify their entry. Clearly, Bleavins has a legitimate privacy interest in his home and in any of the surrounding area that would be considered curtilage. *Siebert v. Severino*, 256 F.3d 648, 653-54 (7th Cir. 2001) ("Both a home and the home's curtilage . . . are within the scope of the Fourth Amendment's protection."). Therefore, if the seized trailers were located within the curtilage of Bleavins' home, appellants' warrantless entry into the area would constitute a violation of Bleavins' Fourth Amendment rights.[2]

The curtilage analysis set out by the Supreme Court in *United States v. Dunn*, 480 U.S. 294 (1987), is well known. The central question in determining whether an

---

[2] Despite the administrative warrant, the entry was warrantless in the Fourth Amendment sense because appellants did not possess a judicial warrant at the time they entered Bleavins' property.

area can be considered curtilage is whether that area "is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 301.

> [C]urtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* These factors, however, do not constitute "a finely tuned formula." *Id.*

However, even if it were to be determined that the seizure occurred within the curtilage of Bleavins' home, appellants may nevertheless be entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is an issue which should be resolved at the earliest possible stage in the litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The qualified immunity analysis begins with a determination as to whether the facts as alleged, viewed in the light most favorable to Bleavins, show a violation of a constitutional right. *Id.* If so, the question then turns to whether the right that was violated was clearly established. *Id.* at 200.

Bleavins contends the trailers were within the curtilage of his home when they were seized. Appellants argue that the available evidence suggests that the trailers were outside the curtilage of Bleavins' home at the time of their seizure. The district court did not make any finding on the issue. The inquiry into whether an area can be

considered curtilage is fact intensive. *See United States v. Breza*, 308 F.3d 430, 435 (4th Cir. 2002).[3] The record in the present case, however, contains very little information regarding the layout of Bleavins' property. Plaintiff offered as an exhibit a sketch of the property made by Bleavins. The record also contained the sketch of Bleavins' property prepared by appellant Bay. From these sketches it appears that the trailers were located in an area of the property behind the house and garage. It also looks like the area is at least partially fenced in and enclosed by shrubs. However, Bay testified in his deposition that he was able to read the license plate numbers on the trailers from across the street using binoculars. We find the record as it currently stands factually inadequate to support a curtilage determination. Therefore, we remand the case to the district court to consider whether the trailers which were seized were located within the curtilage of Bleavins' home and, if they were, whether appellants could have reasonably believed that the area was not curtilage.

The district court's grant of summary judgment in favor of Bleavins is reversed. The case is remanded to the district court for further proceeding consistent with this opinion.

REVERSED and REMANDED.

---

[3] The *Breza* court recognized that a dispute exists among the circuits as to the proper standard for appellate review of a district court's curtilage determination. 308 F.3d at 435. The district court in the present case did not reach the curtilage issue, so we need not address this issue at this time.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*